**Below is the Order of the Court.**

Karen A. Overstreet
U.S. Bankruptcy Judge
(Dated as of Entered on Docket date above)

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re: | IN CHAPTER 11 PROCEEDING |
| CASCADE AG SERVICES, INC., | NO. 12-18366-KAO |
| Debtor. | [REVISED] [PROPOSED] ORDER APPROVING SALE PROCEDURES |

Upon the motion, dated June 28, 2013 (the "**Motion**"),[1] of Cascade Ag Services, Inc., the debtor and debtor in possession in the above-captioned chapter 11 case (the "**Debtor**"), seeking entry of an order (this "**Sale Procedures Order**") pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), approving procedures for the Sale of the Debtor's assets and the form and manner of notice; and the Court having reviewed the Motion and heard the statements in support of the relief requested therein at a hearing before the Court (the "**Hearing**") on June 28, 2013, if any; and having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted

---

[1] All capitalized terms used but otherwise not defined herein shall have the meanings ascribed to them in the Motion.

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

herein; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefore,

THE COURT HEREBY FINDS THAT:

A. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Notice of the Motion and proposed entry of this Sale Procedures Order was proper and sufficient for all purposes under the Bankruptcy Code, including, without limitation, section 102(1) of the Bankruptcy Code, and no further notice of, or hearing on, the Motion with respect to this Sale Procedures Order is necessary or required.

C. The Debtor has articulated good and sufficient reasons for this Court to approve the sale procedures set forth in the Motion.

D. The Debtor has articulated good and sufficient reasons for a Break-Up Fee to be paid to the Stalking Horse subject to the modifications set forth in this Order and with the modifications to the Break-Up Fee herein, the Break-Up Fee is reasonable and appropriate given, among other things, the size and nature of the transaction and the efforts that have been expended and will continue to be expended by the Stalking Horse in connection with the Sale.

E. The entry of this Sale Procedures Order is in the best interests of the Debtor, the estate, its creditors, and other parties with an interest in this bankruptcy case.

IT IS HEREBY ORDERED THAT:

1. The Motion is granted to the extent provided herein.

2. All objections, if any, to the Debtor's request for entry of this Sale Procedures Order that have not been withdrawn, waived, or settled as announced to the Court at, or prior to, the Hearing or by stipulation are hereby overruled.

3. The sale procedures (the "**Sale Procedures**") substantially in the form attached hereto as **Exhibit A**, are hereby approved as amended herein. The failure to specifically include

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

or reference any particular provision, section or article of the Sale Procedures in this Sale Procedures Order shall not diminish or impair the effectiveness of such provision, it being the Court's intent that the Sale Procedures be authorized and approved in their entirety unless otherwise modified by this Order.

4. Service of the Motion as set forth in the Proof of Service filed by the Debtor constitutes good and sufficient notice of the Sale and the Sale Procedures.

5. The Stalking Horse shall be deemed a Final Bidder, and the APA shall be deemed a Qualified Bid, upon entry of this Order.

6. The Stalking Horse shall, no later than **5:00 p.m. on Friday, July 26, 2013**, inform the Debtor, and file with the Court, its best estimate of the amount of the Break-Up Fee (as defined in paragraph 17 below) based upon the actual third-party, out-of-pocket expenses the Stalking Horse has incurred through July 26, 2013, which amount shall be announced at the Auction, if the Auction occurs.

7. One PacificCoast Bank, Washington Federal and Columbia State Bank (collectively the "Senior Secured Creditors"), Skagit Farmers and RSF Mezzanine Fund shall be deemed Qualified Bidders and excused from satisfying the Qualified Bid requirements set forth in Exhibit A hereto.

8. In the event that the Debtor's counsel does not receive any other Qualified Bids greater than the amount of the Stalking Horse bid by the Bid Deadline, the Sales Agent will not hold the Auction, and shall report the same to the Court. In the event that the Debtor's counsel receives only one additional Qualified Bid in addition to the Stalking Horse bid by the Bid Deadline, the Sales Agent may, in its sole discretion, cancel the Auction and either: (a) designate the Stalking Horse bid as the Winning Bid; (b) designate the additional Qualified Bid as the Winning Bid; or (c) decline to designate the Stalking Horse bid or the additional Qualified Bid as the Winning Bid, and report the same to the Court. In the event no Winning Bid is approved by the Sales Agent, the Sales Agent, on behalf of the Debtor, shall, as set forth below in Section 13,

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

Case 12-18366-KAO    Doc 512    Filed 06/28/13    Ent. 06/28/13 16:20:17    Pg. 3 of 16

file, by the date that the Auction Report (as defined below) would otherwise be due, a request for approval of alternative disposition procedures.

9. The Debtor shall, no later than **5:00 p.m. July 19, 2013**, circulate to the Senior Secured Creditors and the Official Unsecured Creditors' Committee, a copy of each Qualified Bid actually received by the Debtor by the Bid Deadline as defined in Exhibit A.

10. The Debtor shall, no later than **July 22, 2013** file a motion to approve the sale of the Debtor's assets (the "**Sale Motion**") seeking entry by the Court of an order that, among other things, authorizes and approves the sale of the Debtor's assets (a) to the Stalking Horse, in the event no other Qualified Bid is received that is designated by the Sales Agent as the Winning Bid or (b) to the Winning Bid, if a Qualified Bid is received and accepted by the Sales Agent as the Winning Bid. If the Sales Agent elects to conduct an Auction, the deadline set by this paragraph is moot.

11. To the extent the Sales Agent receives one or more Qualified Bids which contain a credit bid component and there is any dispute, including a dispute over how such credit bid shall be given value in the Auction and treated vis-à-vis any other Qualified Bidder at the Auction or whether such creditor may participate as a Final Bidder, the Court shall hold a hearing on **July 25, 2013 at 9:30 a.m.** to adjudicate such credit bid disputes. Any Qualified Bidder intending to object must file a written objection with the Court on or before **July 23, 2013**.

12. The Auction, if one is required, shall be conducted at the offices of Cairncross & Hempelmann, P.S., 524 2nd Ave, Suite 500 Seattle, WA 98104, or such other location as may be agreed upon by the Sales Agent and the Final Bidders in order to accommodate the number of participants, commencing on **July 30, 2013 at 9:00 a.m. (Pacific Daylight Time)**.

13. In the event an Auction is conducted, the Sales Agent, on behalf of the Debtor, shall, by **August 2, 2013**, file a report (the "**Auction Report**") that identifies, among other things: (a) the identity of the Winning Bidder; (b) the identity of the Alternative Bidder; (c) an executed purchase and sale agreement; and (d) any additional executory contracts or leases to be

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

Case 12-18366-KAO    Doc 512    Filed 06/28/13    Ent. 06/28/13 16:20:17    Pg. 4 of 16

assumed and assigned to the Winning Bidder in connection with the Sale. The Debtor shall file contemporaneous with the filing of the Auction Report, the Sales Motion for authorization and approval of the sale of the Debtor's Assets to the Winning Bidder. The Debtor shall annex to the Sales Motion, as an exhibit, a proposed order approving the Sale on the terms set forth in the Winning Bid, and shall serve the Sales Motion and the Auction Report on all parties in interest in this case.

14. A hearing seeking Court approval of the Sale on the terms set forth in the Winning Bid (the "**Sale Hearing**") shall be held **during the week of August 12, 2013** at a date and time certain to be determined. .

15. Objections to the Sale shall be filed and served by **August 6, 2013**, and the Debtor's reply shall be due no later than **August 8, 2013**.

16. The Break-Up Fee, as defined in the Section 10.5 of the APA is denied and hereby deleted from the terms of the APA.

17. A new Break-Up Fee ("Approved Break-Up Fee") is approved as follows:

**Approved Break-Up Fee.** If the termination of the APA is by the Debtor pursuant to Section 10.1(e) of the APA due to this Court approving a sale of all or part of the Acquired Assets by sale to a Bidder(s) other than the Stalking Horse Bidder, the Debtor shall pay the Stalking Horse Bidder in cash, at the Closing of such transaction(s) and prior to disbursement of Debtor's funds to any third party including the secured creditors, the Stalking Horse Bidder's reasonable and actual expenses, as determined by this Court, incurred solely in connection with this transaction up to $100,000.00 ("Break-Up Fee"), which shall constitute an administrative expense of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 503(b).

18. If the Approved Break-Up Fee is triggered, the Debtor shall pay the Approved Break-Up Fee to the Stalking Horse pursuant to the terms and conditions set forth in section 13, subject to documentation. If a party in interest objects to the amount of the Approved Break-Up

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

Case 12-18366-KAO    Doc 512    Filed 06/28/13    Ent. 06/28/13 16:20:17    Pg. 5 of 16

Fee, it shall not be paid until after notice and a hearing before the Court, which hearing may address, among other things, the reasonableness of the actual out-of-pocket third-party expenses incurred in connection with the Sale. The Approved Break-Up Fee shall be paid at the closing of any Alternative Transaction (as that term is defined in the APA) and shall be paid concurrently or ahead of any other distributions or payments by the Debtor contemplated in connection with such Alternative Transaction by the successful bidder. The Debtor's obligation to pay the Approved Break-Up Fee shall constitute superpriority administrative expense obligations of the Debtor under Sections 503(b) and 507(b) of the Bankruptcy Code.

19. If, at any time between the entry of an order approving the Sale Procedures Motion and the time that the Sales Agent designates a Winning Bidder, the Stalking Horse terminates the APA, unless pursuant to APA Sections 10.1(a)-(c), the Stalking Horse's Bid Deposit shall be fully forfeited to the Debtor.

20. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Sale Procedures Order.

///End of Order///

Presented by:

**CAIRNCROSS & HEMPELMANN, P.S.**


/s/ John R. Rizzardi
John R. Rizzardi, WSBA No. 9388
Jessica C. Tsao, WSBA No. 44382
Attorneys for Debtor

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

Case 12-18366-KAO    Doc 512    Filed 06/28/13    Ent. 06/28/13 16:20:17    Pg. 6 of 16

Agreed as to form; notice of presentation waived

**FOSTER PEPPER PLLC**

/s/ Deborah A. Crabbe
Deborah A. Crabbe, WSBA No. 22263
Attorneys for Columbia State Bank

**BALL JANIK LLP**

/s/ David W. Criswel
David W. Criswell, WSBA No. 33410
Attorneys for One Pacific Coast Bank FSB

**LANE POWELL PC**

/s/ Charles R. Ekberg
Charles R. Ekberg, WSBA No. 342
Attorneys for Washington Federal Bank

[REVISED] [PROPOSED] ORDER APPROVING
SALE PROCEDURES - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

# EXHIBIT A TO SALE PROCEDURES ORDER

## Sale Procedures

On [•], the United States Bankruptcy Court for the Western District of Washington (the "**Court**" or the "**Bankruptcy Court**") entered the *Order Approving Sale Procedures* [Docket No. •] (the "**Sale Procedures Order**"), by which the Bankruptcy Court approved the procedures outlined below (the "**Sale Procedures**"). The Court has previously appointed Red to Black Advisors, LLC as the sales agent (the "**Sales Agent**") to oversee the sale.

The sale of the Debtor's assets (the "**Sale**") will take place by auction and is subject to competitive bidding as set forth herein and approval of a sale to the highest or otherwise best qualified bid by the Bankruptcy Court at a hearing (the "**Sale Hearing**") pursuant to sections 105, 363 and 365 of title 11 of the United State Code (the "**Bankruptcy Code**").

## 1. Participation Requirements

Only those persons or entities who are determined in the Sales Agent's sole judgment to be capable of consummating the Sale and who, no later than **July 3, 2013**: (a) enter into a confidentiality agreement with the Debtor,[2] and (b) deliver to the Sales Agent any documentation reasonably requested by the Sales Agent to demonstrate the ability to fund a successful bid shall be entitled to participate in the auction of the Debtor's assets (each such person or entity a "**Qualified Bidder**"). No person or entity shall be a Qualified Bidder until the Sales Agent has confirmed in writing that such person or entity is a Qualified Bidder.

## 2. Stalking Horse

Triak Holdings, LLC (the "**Stalking Horse**") has been designated by the Debtor to be the "stalking horse" bidder for the Sale. The Stalking Horse shall be deemed a Final Bidder (as defined below), and the asset purchase agreement dated June 21, 2013, between the Stalking Horse and the Debtor shall be deemed a Qualified Bid (as defined below).

## *3. Due Diligence*

Only Qualified Bidders may conduct due diligence, and all due diligence must be completed by **5:00 p.m. (Pacific Daylight Time) on July 12, 2013**. At the Sales Agent's discretion, due diligence access may include management presentations, access to physical and online data rooms, on-site inspections, and such other matters that a Qualified Bidder may reasonably request and as to which Sales Agent, in its reasonable exercise of discretion, may agree.

The Sales Agent will coordinate all responses to requests for additional information and due diligence access, and may, in its sole discretion, coordinate due diligence efforts such that multiple Qualified Bidders have simultaneous access to due diligence materials. Neither the Debtor, the Sales Agent, nor any of their affiliates or representatives is obligated to furnish any information relating to any portion of the Debtor's assets to any person other than a Qualified Bidder.

---

[2] The Sales Agent may, in its sole discretion, require persons or entities who have already executed a confidentiality agreement to execute a new confidentiality agreement.

## 4. Bid Deadline

All bids must be submitted to the Debtor's counsel, John Rizzardi, Cairncross & Hempelmann, P.S., 524 Second Avenue, Suite 500, Seattle, WA 98104, and **actually received by 3:00 p.m. (Pacific Daylight Time) on July 19, 2013** (the "**Bid Deadline**).

## 5. Qualified Bids

Only bids that are received from Qualified Bidders before the Bid Deadline and that include documents that satisfy each of the requirements set forth below (each, a "**Qualified Bid**") will be considered at the auction for the Debtor's assets (the "**Auction**"). Qualified Bids must, at a minimum:

(a) state: (i) whether the Qualified Bidder offers to purchase all or only a portion of the Debtor's assets; (ii) set forth the total purchase price and components thereof (e.g., cash, credit bid, or a combination); and (iii) if not already provided, describe the Qualified Bidder's source of funding;

(b) to the extent the Qualified Bid is for all of the Debtor's assets, state that the Qualified Bidder offers to purchase all or substantially all of the Debtor's assets for a purchase price or other value that is equal to or greater than the sum of the Purchase Price, plus (i) the amount of the Break-Up Fee (as defined below), plus (ii) $50,000.00.

(c) be irrevocable until entry of a Sale Order (as defined below);

(d) include a duly authorized and executed purchase and sale agreement (the "**Proposed PSA**") substantially in the form attached hereto as Exhibit 1 (the "**Form PSA**"), together with all exhibits and schedules thereto;

(e) include "blacklined" or marked copies of the Proposed PSA to show differences between the Proposed PSA and the Form PSA;

(f) be accompanied by a deposit (by means of a certified bank check from a domestic bank or by wire transfer payable to the Debtor) in an amount equal to the greater of: (i) $100,000 and (ii) ten percent (10%) of the total purchase price set forth in the bid (the "**Bid Deposit**");

(g) not be conditioned on the outcome of unperformed due diligence by the Qualified Bidder, and include an acknowledgement and representation that the Qualified Bidder has had an opportunity to conduct any and all required due diligence prior to making its bid;

(h) not be conditioned upon further approval by the Court of any bid protections, such as a break-up fee, termination fee, expense reimbursement or similar type of payment (unless such bid protection is approved by order of the Court);

(i) include written evidence of a firm, irrevocable commitment for financing from a creditworthy bank or financial institution that will finance the purchase without (i) alteration of conditions or (ii) delays, and that is not

contingent as of the Auction; or, other evidence of ability, as determined in the Sales Agent's reasonable business judgment, to consummate the transaction contemplated by the Proposed PSA;

(j) fully disclose the identity of each entity that will be bidding for all or any portion of the Debtor's assets or otherwise sponsoring or participating in connection with such bid, and the complete terms of any such participation, including the identification of the Qualified Bidder's principal advisors;

(k) not be conditioned on the assumption or assignment of any contract or lease;

(l) if the Proposed PSA contemplates assumption and assignment of any executory contract or unexpired lease, include (i) an acknowledgment and representation that the Qualified Bidder will assume the Debtor's obligations under the executory contracts and unexpired leases proposed to be assumed and assigned (or identify, with particularity, which of the Debtor's contracts and leases the Qualified Bidder does not wish to assume); and (ii) full details of the Qualified Bidder's proposal for the treatment of any related cure costs;

(m) include an acknowledgement and representation that the Qualified Bidder (i) relied solely upon its own independent review, investigation and/or inspection of any documents and/or all or any portion of the Debtor's assets in making its bid; (ii) did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express or implied (by operation of law or otherwise), regarding all or any portion of the Debtor's assets or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Proposed PSA; and (iii) disclose any agreements made or intended to be made that involve any owners or senior management of the Debtor;

(n) include a representation that the Qualified Bidder can close within ten days after a Sale Order (as defined below) is entered;

(o) include an agreement by the Qualified Bidder to indemnify the estate from any claim for a broker's fee, finder's fee, or similar fee;

(p) include evidence, in form and substance reasonably satisfactory to the Sales Agent, of authorization and approval from the Qualified Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposed PSA;

(q) include evidence of the Qualified Bidder's ability to comply with Section 365 of the Bankruptcy Code (to the extent applicable), which includes providing adequate assurance of such Qualified Bidder's ability to perform the contracts and leases proposed in its bid to be assumed by, or subleased to, the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such

contracts and leases;

(r) include a covenant to hold the Sales Agent harmless from any and all damages arising out of or related to the Sale and/or the sale procedures set forth herein; and

(s) contain other information reasonably requested by the Sales Agent.

A Qualified Bid may consist of a bid for the Debtor as a going concern or for any or all of the Debtor's assets; and may contain a credit bid component only if the Qualified Bidder is a secured creditor of the Debtor.

6. **Initial Bid Evaluation**

Whether the bid of a Qualified Bidder meets the foregoing requirements to become a Qualified Bid will be determined solely by the Sales Agent on behalf of the Debtor, in consultation with the Debtor's counsel. In evaluating bids, the Sales Agent: (a) will exercise reasonable business judgment, (b) may confer with the Debtor's management, and (c) may reject any bid that (i) does not meet any of the requirements set forth above, (ii) entitles the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment (unless the same is approved by order of the Court), or (iii) is contrary to the best interests of the estate, its creditors, and other parties in interest. The Sales Agent may, in its sole discretion, inform any Qualified Bidder whose bid is subject to rejection of the basis for rejection or potential rejection, and allow such Qualified Bidder to submit a revised bid no later than 24 hours following such notice of rejection or potential rejection; provided, however, that the Sales Agent may not disclose the identity of any Qualified Bidder to another Qualified Bidder in the course of providing such notice.

The Sales Agent will select those Qualified Bidders whose bids are determined to be Qualified Bids and will, by July 23, 2013, notify such Qualified Bidders (the "**Final Bidders**") that they have been selected to participate in the Auction.

If the Debtor's counsel does not receive any other Qualified Bids greater than the amount of the Stalking Horse bid by the Bid Deadline, the Sales Agent will not hold the Auction, and shall report the same to the Court. In the event that the Debtor's counsel receives only one additional Qualified Bid in addition to the Stalking Horse bid by the Bid Deadline, the Sales Agent may, in its sole discretion, cancel the Auction and either: (a) designate the Stalking Horse bid as the Winning Bid; (b) designate the additional Qualified Bid as the Winning Bid; or (c) decline to designate the Stalking Horse bid or the additional Qualified Bid as the Winning Bid, and report the same to the Court. In the event no Winning Bid is approved by the Sales Agent, the Sales Agent, on behalf of the Debtor, shall, as set forth below in Section 9, file, by the date that the Auction Report (as defined below) would otherwise be due, a request for approval of alternative disposition procedures.

7. **Auction Procedures**

The Debtor shall, no later than **5:00 p.m. July 19, 2013**, circulate to the One PacificCoast Bank, Washington Federal, Columbia State Bank and the Official Unsecured Creditors' Committee, a copy of each Qualified Bid actually received by the Debtor by the Bid Deadline.

If the Sales Agent determines that there is more than one Qualified Bid, the Sales Agent shall conduct the Auction at the offices of Debtor's counsel, 524 Second Avenue, Suite 500,

{02304269.DOCX;1 }
Sale Procedures - 5

Case 12-18366-KAO    Doc 512    Filed 06/28/13    Ent. 06/28/13 16:20:17    Pg. 11 of 16

Seattle, WA, beginning at **9:00 a.m. (Pacific Daylight Time) on July 30, 2013,** or at such later time or other place as agreed to by the Sales Agent and all Final Bidders. The Auction shall be conducted by the Sales Agent in accordance with the following procedures:

(a) Only the Sales Agent on behalf of the Debtor, Debtor's counsel, and representatives of any Final Bidders shall be entitled to attend the Auction, and only Final Bidders shall be entitled to make any Subsequent Bids (as defined below). Secured creditors may have observers present at the Auction, and counsel for the Official Committee of Unsecured Creditors may also observe the Auction.

(b) At the Auction, all Final Bidders shall be permitted to increase their Qualified Bids in accordance with the procedures set forth herein (each, a "**Subsequent Bid**"). All Subsequent Bids presented during the Auction shall be made and received in one room on an open basis. All participating Final Bidders shall be entitled to be present for all bidding with the understanding that the true identity of each participating Final Bidder shall be fully disclosed to all other Final Bidders and that all material terms of each Subsequent Bid presented during the Auction will be fully disclosed all other participating Final Bidders throughout the entire Auction.

(c) All Final Bidders at the Auction must have at least one individual representative with authority to bind such Final Bidder present in person at the Auction.

(d) All proceedings at the Auction shall be conducted before and transcribed by a court stenographer and/or video recorded. Any video record of the proceedings shall be admissible in any proceeding before this Court.

(e) At least one (1) day prior to the Auction, the Sales Agent will advise all Final Bidders of which Qualified Bid the Sales Agent has determined to be the then highest or otherwise best offer for the Debtor's assets (the "**Starting Bid**").

(f) Bidding at the Auction will begin with the Starting Bid and continue, in one or more rounds of bidding, so long as during each round at least one Subsequent Bid is submitted (i) by a Final Bidder that improves upon such Final Bidder's immediately prior Qualified Bid and meets the overbid requirement set forth in paragraph (g) below; and (ii) that the Sales Agent determines in its reasonable business judgment, is a higher or otherwise better offer than the then-highest Qualified Bid.

(g) Bidding at the Auction shall be in increments of U.S. $50,000.00 and shall continue until such time as the highest and best bid is determined by the Sales Agent in its reasonable business judgment. The Sales Agent, in its sole discretion, shall have the right to modify the bidding increments throughout the course of the Auction. For the purpose of evaluating the value of the consideration provided by each bid (including any Subsequent Bid) presented at the Auction, the value will: (i) be deemed to be the net present and future consideration payable to the Debtor and (ii) take into account any additional liabilities to be assumed by a Final Bidder as well

as any additional costs that may be imposed on the Debtor under any such bid.

(h) After the first round of bidding and between each subsequent round of bidding, the Sales Agent shall announce the Qualified Bid or Subsequent Bid, as the case may be, that the Sales Agent has determined in its reasonable business judgment, to be the then-highest or best bid (the "**Leading Bid**"). A round of bidding will conclude after each participating Final Bidder has had an opportunity to submit a Subsequent Bid with full knowledge of the Leading Bid.

(i) At the conclusion of the Auction pursuant to paragraph (g) above, the Sales Agent will announce the Qualified or Subsequent Bid that the Sales Agent has determined in its reasonable business judgment to be the highest and best bid (the "**Winning Bid**" and the applicable bidder the "**Winning Bidder**") and such Winning Bid will be presented to the Court by the Sales Agent for approval, along with the second highest and best Qualified Bid (the "**Alternative Bid**" and the applicable bidder the "**Alternative Bidder**"). The Debtor will be deemed to have accepted any Qualified Bid only when such Qualified Bid is determined to be the Winning Bid and has been approved by the Court.

(j) At the Auction, the Sales Agent, after consultation with the Sales Agent, may employ and announce additional or revised procedural rules that are fair and reasonable under the circumstances (including, for example, the imposition of reasonable time increments upon bidders for returning a Subsequent Bid, the disqualification of a bidder for any unreasonable delay in the bidding process for conducting the Auction, or a change to the minimum incremental increase between Subsequent Bids); provided, however, that such rules are (i) not inconsistent with the Bankruptcy Code or any order of the Court entered in connection with the Sale and (ii) disclosed to all persons present at the Auction.

The Stalking Horse shall, no later than 5:00 p.m. on Friday, July 26, 2013, inform the Debtor, and file with the Court, its best estimate of the amount of the Break-Up Fee (as defined in the APA) based on the actual third-party, out-of-pocket expenses the Stalking Horse has incurred through July 26, 2013, which amount shall be announced at the Auction.

8. **Credit Bidding**

Any creditor (including, without limitation, One PacificCoast Bank, Washington Federal, Columbia Bank, Skagit Farmers and RSF Mezzanine Fund) holding an allowed claim secured by all or any portion of the Debtor's assets shall be entitled to, in connection with the foregoing procedures and provided that such creditor is a Qualified Bidder, credit bid to the extent of such creditor's security interest pursuant to 11 U.S.C. § 363(k) and other applicable law. Notwithstanding anything herein to the contrary, such secured creditors will not be required to provide proof of funding (either in connection with becoming a Qualified Bidder or in order for their bids to be deemed Qualified Bids), and any secured creditor that is a financial institution will not be required to submit a Bid Deposit in order for its bid to be deemed a Qualified Bid.

To the extent the Sales Agent receives one or more Qualified Bids which contain a credit

bid component and there is any dispute, including a dispute over how such credit bid shall be given value in the Auction and treated vis-à-vis any other Qualified Bidder at the Auction or whether such creditor may participate as a Final Bidder, the Court shall hold a hearing on July 25, 2013 at 9:30 a.m. to adjudicate such credit bid disputes. Any Qualified Bidder intending to object must file a written objection with the Court on or before July 23, 2013.

9. **The Sale Hearing**

The Debtor shall, no later than **July 22, 2013** file a motion to approve the sale of the Debtor's assets (the "**Sale Motion**") seeking entry by the Court of an order that, among other things, authorizes and approves the sale of the Debtor's assets (a) to the Stalking Horse, in the event no other Qualified Bid is received that is designated by the Sales Agent as the Winning Bid or (b) to the Winning Bid, if a Qualified Bid is received and accepted by the Sales Agent as the Winning Bid. If there the Sales Agent elects to conduct an Auction, the deadline set by this paragraph is moot.

In the event an Auction is conducted, the Sales Agent, on behalf of the Debtor, shall, by **August 2, 2013**, file a report (the "**Auction Report**") that identifies, among other things: (a) the identity of the Winning Bidder; (b) the identity of the Alternative Bidder; (c) an executed purchase and sale agreement; and (d) any additional executory contracts or leases to be assumed and assigned to the Winning Bidder in connection with the Sale. The Debtor shall file contemporaneous with the filing of the Auction Report, the Sales Motion for authorization and approval of the sale of the Debtor's Assets to the Winning Bidder. The Debtor shall annex to the Sales Motion, as an exhibit, a proposed order approving the Sale on the terms set forth in the Winning Bid, and shall serve the Sales Motion and the Auction Report on all parties in interest in this case.

A hearing seeking Court approval of the Sale on the terms set forth in the Winning Bid (the "**Sale Hearing**") shall be held **during the week of August 12, 2013** at a date and time certain to be determined.

**Objections to the Sale shall be filed and served by August 6, 2013, and the Debtor's reply shall be due no later than August 8, 2013.**

If, following the entry of the Sale Order by the Court, the Winning Bidder fails to consummate a transaction with the Debtor, then the Alternative Bid shall be deemed the Winning Bid and the Debtor shall be authorized to consummate a transaction in respect of the Alternative Bid without further order of the Court.

10. **Closing**

The Sale shall close no later than ten (10) days after the Court enters the Sale Order (the "**Closing Deadline**"), unless the Debtor, in the Sale's Agent's sole discretion, requires additional time for closing. In such an event, the Sales Agent shall file a status report with the Court summarizing the nature of and reasons for such delay. Any party in interest may request a status hearing before this Court on three (3) business days' notice to raise concerns with the closing of the Sale.

11. **Failure to Consummate Purchase**

If the Winning Bidder fails to consummate the Sale by the Closing Deadline, and such failure is the result of a breach by the Winning Bidder, the Winning Bidder's Bid Deposit shall

be fully forfeited to the Debtor, and the Debtor shall be entitled to seek all additional available damages or other remedies from or against the Winning Bidder.

## 12. Return of Bid Deposits

Subject to the foregoing, the Bid Deposits of the Winning Bidder and the Alternative Bidder shall be retained by the Debtor, and such Deposits shall be promptly returned following the expiration of 14 days after entry of the Sale Order. Bid Deposits of all other Qualified Bidders shall be promptly returned following entry of the Sale Order.

## 13. Modifications

At any time before the Sale Hearing, the Sales Agent may, in an exercise of its reasonable business judgment and in consultation with the Sales Agent: (a) reject any bid, including the Winning Bid and the Alternative Bid, that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, the procedures herein, or any other orders of the Court, or (iii) contrary to the best interests of the estate, its creditors, and other parties in interest; and (b) designate another Qualified Bid as the Winning Bid or the Alternative Bid.

## 14. Other

In the event that the Sales Agent and any party disagree as to the interpretation or application of the procedures set forth herein, the Court will have jurisdiction to hear and resolve such dispute.

# EXHIBIT 1 TO SALE PROCEDURES

## Form PSA

[INTENTIONALLY OMITTED – SEE ORIGINAL PROPOSED ORDER]