Hon. Karen A. Overstreet
Chapter: 11
Location: Seattle, WA
Hearing Date: August 20, 2013
Hearing Time: 9:30 a.m.
Response Date: August 6, 2013

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

In re:

CASCADE AG SERVICES, INC.,

Debtor.

NO. 12-18366-KAO

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES[1]

## I. INTRODUCTION AND RELIEF REQUESTED

Cascade Ag Services, Inc. (the "**Debtor**"), the debtor and debtor in possession in this Chapter 11 case, hereby moves the Court for an order (1) approving the sale of substantially all estate assets free and clear of all liens, claims, interests and encumbrances pursuant to 11 U.S.C. § 363, and (2) authorizing the Debtor to assume and assign certain executory contracts and unexpired leases.

---

[1] On June 6, 2013, the Debtor filed a "two-in-one" motion requesting both: (1) approval of proposed procedures for the sale of the Debtor's assets and (2) approval of the sale of the Debtor's assets free and clear of liens. (*See* Dkt. No. 471.) The Debtor concurrently filed a "Notice of Multiple Hearings," setting forth two separate hearing dates: one on the Debtor's request or approval of sale procedures, and another (August 9, 2013) on the Debtor's request for approval of the sale. At the Court's request, and in accordance with the Court's Order Approving Sale Procedures (Dkt. No. 512), the Debtor is now filing a separate motion requesting approval of the sale of its assets. Additionally, this request, which was originally noted for August 9, 2013, will now be heard on August 20, 2013. Accordingly, the Debtor has filed and served an Amended Notice of Hearing concurrently with this motion.

[AMENDED] MOTION FOR APPROVAL OF SALE OF
SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES - 1

{02341541.DOCX;2}

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

## II. BACKGROUND

**A. Events Leading up to this Sale**

The Debtor filed a voluntary, Chapter 11 petition for relief on August 13, 2012 (the "**Petition Date**"). Since the Petition Date, the Debtor has managed and operated its business as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. Furthermore, before and since the Petition Date, the Debtor has made good-faith efforts to sell and restructure its business.

Specifically, at various times prior to the Petition Date, the Debtor engaged Zachary Scott & Company, Moss Adams, and then Hamstreet & Associates ("**Hamstreet**") to pursue strategic alternatives for the Debtor. Once Hamstreet began working with the Debtor, it contacted various parties regarding acquisition of or investment in the Debtor.[2] After the Petition Date, several parties contacted the Debtor and Hamstreet to express interest in reorganizing, recapitalizing, or liquidating the Debtor, and in October 2012, the Debtor negotiated and received an offer from Pleasant Valley Farms, LLC (the "**First Buyer**") to purchase substantially all of the Debtor's assets.[3] On October 24, 2012, the Court entered an order approving auction procedures for the sale of the Debtor's assets, and designating the First Buyer as the "stalking horse" bidder.[4] However, as the Court is well aware, the First Buyer withdrew its offer before an auction could occur.[5]

The Debtor still intended, following the First Buyer's withdrawal, to sell substantially all of its assets, either through a Section 363 sale or a plan of reorganization.[6] Accordingly, the Debtor redoubled its efforts to negotiate a sale and implement aggressive efforts to cut costs and

---

[2] *See generally* Declaration of Gary Lawrence in Support of Debtor's Motion for an Order Extending the Exclusive Periods during which Only the Debtor may File a Chapter 11 Plan and Solicit Acceptances Thereof (Dkt. No. 262).
[3] *See* Debtor's Motion for an Order Approving (A) the Stalking Horse Sale Agreement Term Sheet, (B) the Bid Procedures, (C) the Sale Notice, and (D) the Assumption Procedures and Assumption Notice (Dkt. No. 160).
[4] *See* Order Approving (A) the Stalking Horse Sale Agreement Term Sheet, (B) the Bid Procedures, (C) the Auction Notice, and (D) the Assumption Procedures and Assumption Notice (Dkt. No. 206).
[5] *See* Supplemental Declaration of John Rizzardi in Support of Debtor's Motion for Entry of an Order Extending the Time to Assume or Reject Unexpired Leases of Nonresidential Real Property (Dkt. No. 242) ¶ 4.
[6] *See* Declaration of Gary Lawrence in Support of Debtor's Motion for an Order Extending the Exclusive Periods During Which Only the Debtor May File a Chapter 11 Plan and Solicit Acceptances Thereof (Dkt. No. 262) ¶ 8.

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 2

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{02341541.DOCX;2}
Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 2 of 13

increase margins.[7] The Debtor also commenced negotiations with Whyte's Food Corporation ("**Whyte's**"), a multi-national food manufacturing and importing company, regarding a capital infusion and equity sale to fund a plan of reorganization.[8] Despite good-faith negotiations, the Debtor and Whyte's were unable to reach an agreement before the Debtor's plan exclusivity period expired.

In the meantime, on February 11, 2013, Columbia State Bank, Washington Federal, and One PacificCoast Bank (the "**Senior Secured Creditors**") filed motions for relief from stay.[9] The Court granted these motions May 14, 2013, following an evidentiary hearing.[10] On May 23, 2013, following a status conference, the Court entered an order setting forth a basic timeline for a sale of the Debtor's assets.[11] And on May 30, 2013, the Court approved the Debtor's employment of Red to Black Advisors, LLC ("**RBA**" or the "**Sales Agent**") as the Debtor's sales agent, with final decisional authority over the sale process subject only to court approval.[12]

**B.  Sales Agent's Marketing Activities**

As soon as its employment was approved, the Sales Agent immediately began contacting parties who had expressed an interest in purchasing the Debtor's assets, including those parties who had been granted access to the on-line data room that was established by Hamstreet in connection with previous sale efforts.[13] The Sales Agent also advertised the forthcoming sale of the Debtor's assets in both the Seattle Times and the Wall Street Journal – Western Edition.[14] Furthermore, the Sales Agent arranged for a notice of the sale to be mailed to members of Pickle Packers International, an organization serving the pickled-vegetable industry.[15] By mid-June, the Sales Agent had been contacted by approximately 17 individuals and entities who were

---

[7] *Id.* ¶ 12.
[8] Declaration of Larry Riley in Support of Debtor's Omnibus Response to Motions for Relief from Stay (Dkt. No. 362) ¶ 5.
[9] *See* Dkt. Nos. 325, 328, and 329.
[10] *See* Order Granting Motions for Relief from Stay and Authorizing Use of Cash Collateral (Dkt. No. 441).
[11] *See* Scheduling Order for Proposed Sale of Cascade Ag Services, Inc.'s Assets (Dkt. No. 448).
[12] *See* Order Approving Employment of Red to Black Advisors, LLC as Debtor's Sales Agent (Dkt. No. 460).
[13] Declaration of Leo Rosenberger ("**Rosenberger Declaration**") ¶ 3.
[14] *See* Affidavits of Publication (Dkt. No. 526).
[15] Rosenberger Declaration ¶ 4.

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 3

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

{02341541.DOCX;2}

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 3 of 13

interested in participating in the auction for the Debtor's assets.[16]

C. **Entry of the Sale Procedures Order and Designation of Stalking Horse**

On June 6, 2013, and after consultation with the Sales Agent, the Debtor filed a motion (the "**Sale Procedures Motion**") seeking the Court's approval of proposed auction procedures for the sale of the Debtor's assets.[17] While the Sale Procedures Motion was pending, the Sales Agent was actively engaged in seeking out a bidder to submit a "stalking horse" purchase agreement, and on June 21, 2013, the Debtor, by and through the Sales Agent, entered into an asset purchase agreement (the "**Stalking Horse APA**") with Triak Holdings, LLC ("**Triak**," or the "**Stalking Horse**"), an affiliate of Whyte's.[18] On June 21, 2013, the Debtor submitted a supplement to the Sale Procedures Motion, requesting that the Court approve Triak's participation as the "stalking horse" bidder.[19]

On June 28, 2013, the Court entered an order (the "**Sale Procedures Order**") approving procedures for the sale of the Debtor's assets.[20] Among other things, the Sale Procedures Order: (a) established certain deadlines and bidding procedures to govern an auction (the "**Auction**") for the Debtor's assets to be held on July 30, 2013, if necessary; (b) designated Triak as the "stalking horse" bidder and approved a break-up fee of up to $100,000 for the Stalking Horse's reasonable and actual expenses; and (c) directed the Debtor to file a motion to approve the sale of its assets no later than July 22, 2013.[21]

D. **Actions Since Entry of Sale Procedures Order**

Since entry of the Sale Procedures Order, the Sales Agent has continued to solicit interest in the Auction, and has coordinated bidder qualification and due diligence efforts. By July 3, 2013 (the deadline for bidder qualification), the Sales Agent had deemed 14 parties Qualified

---

[16] *Id.*
[17] *See* Debtor's Motion for: (I) and Order Approving Sale Procedures and (II) an Order Approving the Sale of the Debtor's Assets Free and Clear of Liens (Dkt. No. 471).
[18] Rosenberger Declaration ¶ 5.
[19] *See* Supplement to Debtor's Motion for (I) an Order Approving Sale Procedures and (II) an Order Approving the Sale of the Debtor's Assets Free and Clear of Liens (the "**Stalking Horse Supplement**," Dkt. No. 490).
[20] *See* Order Approving Sale Procedures (Dkt. No. 512).
[21] *See id.*

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 4

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

{02341541.DOCX;2}

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 4 of 13

Bidders (as defined in the Sale Procedures Order).[22] And on July 19, 2013—the Bid Deadline—the Sales Agent received six bids from Qualified Bidders (including credit bids from the Senior Secured Creditors). As of the filing of this motion, the Sales Agent is in the process of determining which of these bids will be deemed Qualified Bids from Final Bidders entitled to participate in the Auction.[23]

### E. Auction, Report of Auction, and Sale Hearing

In an effort to maximize the value of Debtor's assets for the estate and its creditors, the Sales Agent may hold an Auction for the Debtor's assets as contemplated by the Sale Procedures Order. If the Sales Agent holds the Auction as scheduled on July 30, 2013, the Debtor will file and serve an Auction Report on or before August 2, 2013, as required by the Sale Procedures Order. If there is competitive bidding at the Auction by one or more Qualified Bidders, a Sale Hearing will be held by this Court on August 20, 2013 at 9:30 a.m. (Pacific Daylight Time), at which time the Debtor will request that the Auction Report be approved and that the Court approve the sale of the Acquired Assets to the Winning Bidder at the Auction. The Winning Bidder may or may not be the Stalking Horse. If the Winning Bidder is not the Stalking Horse, the Auction Report will request that the Court approve the Break-Up Fee (as defined in the Sale Procedures Order) at the Sale Hearing.

### F. The Stalking Horse APA

In the meantime, and pursuant to the Sale Procedures Order, the Debtor submits that the Court should authorize and approve the sale of the Debtor's assets to the Stalking Horse, subject to the Debtor receiving a higher and better offer from an alternate Winning Bidder at the Auction. The Stalking Horse APA has previously been filed with the Court, and contemplates the Stalking Horse's purchase of substantially all of the Debtor's assets (the "**Acquired Assets**,"

---

[22] Rosenberger Declaration ¶ 6. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Sale Procedures Order.
[23] *See id*. ¶ 7.

[AMENDED] MOTION FOR APPROVAL OF SALE OF
SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES - 5

{02341541.DOCX;2}

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 5 of 13

as more particularly set forth in the Stalking Horse APA) for $3 million cash at closing.[24]

The Stalking Horse APA also contemplates the possible assumption by the Debtor of certain executory contracts to be determined by the Stalking Horse, which contracts would be assigned to the Stalking Horse as part of the transactions contemplated by the Stalking Horse APA.[25] The Stalking Horse has not yet identified any executory contracts for assumption and assignment; nonetheless, the Debtor does not believe there are any executory contracts to be assumed or assigned.[26] Additionally, the Stalking Horse APA contemplates the Stalking Horse's acquisition of certain capitalized leases.[27] However, the only capitalized leases to which the Debtor is a party will be paid in full by July 31, 2013—before the Sale Hearing or the closing of any sale.[28] In any event, if the Stalking Horse (or the Winning Bidder) identifies for assumption and assignment any executory contracts or unexpired leases, the Debtor will disclose the same in the Auction Report, along with any related cure costs, and will make best efforts to notify the applicable counterparties of the proposed assumption/assignment, the asserted cure costs, and the timing of the Sale Hearing.[29]

Based on the Debtor's pre- and post-petition marketing efforts and negotiations with potential buyers for the Acquired Assets, and subject to the Sales Agent's further review of bids from Qualified Bidders, followed by the Auction, the consideration recited in the Stalking Horse APA represents the highest and best formal offer the Debtor has received to purchase the Acquired Assets, since the First Buyer withdrew.[30] Accordingly, the Debtor submits that the Court should approve the sale of the Acquired Assets as contemplated by the Stalking Horse APA, subject to the Debtor receiving a higher and better offer from an alternate purchaser at the Auction.

---

[24] *See* Stalking Horse Supplement (Dkt. No. 490).
[25] *See* Stalking Horse APA at ¶¶ 2.2(b), 2.7; Stalking Horse APA Schedule 2.2(b).
[26] Rosenberger Declaration ¶ 9.
[27] *See* Stalking Horse APA ¶ 2.1(l); Schedule 2.1(l).
[28] Rosenberger Declaration ¶ 9.
[29] *Id.* ¶ 9.
[30] *See id* ¶ 8. The Debtor received a higher offer from Whyte's in late March; however, no terms were negotiated or agreed upon at that time.

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 6

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{02341541.DOCX;2}
Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 6 of 13

## III. STATEMENT OF ISSUES

A. Whether the Court should approve the sale of the Debtor's assets to the Stalking Horse, free and clear of liens and as contemplated in the Stalking Horse APA—subject to the Debtor receiving a higher and better offer at the Auction.

B. Whether the Court should approve the assumption and assignment of executory contracts and unexpired leases as will be set forth in the Auction Report, if applicable.

## IV. EVIDENCE RELIED UPON

This Motion relies upon all of the files and records herein, including the Rosenberger Declaration, which is submitted concurrently herewith.

## V. ARGUMENT AND AUTHORITY

**A. The Proposed Sale is in the Best Interests of the Estate and Its Creditors.**

The Court should approve the sale of the Acquired Assets described in the Stalking Horse APA, free and clear of liens and encumbrances, subject to the Debtor receiving higher or better offers to purchase the Debtor's assets at the Auction. Section 363(b) of the Bankruptcy Code authorizes a debtor in possession to sell estate assets outside of the ordinary course of business provided each of the following elements is satisfied: (i) a sound business reason exists for the proposed transaction; (ii) the sale has been proposed in good faith; (iii) the sale price is fair and reasonable; and (iv) accurate and reasonable notice has been provided of the transaction.[31] For the reasons set forth below, the Debtor's proposed sale of the Acquired Assets pursuant to the Stalking Horse APA satisfies each of these four factors.

**1. The proposed sale is supported by sound business reasons.**

The paramount goal in any proposed sale of property of the estate in a bankruptcy case is to maximize the proceeds of such sale.[32] To that end, courts uniformly recognize that procedures

---

[31] *In re Country Manor of Kenton, Inc.*, 172 B.R. 217, 220-21 (Bankr. N.D. Ohio 1994); *In re Stroud Ford, Inc.*, 163 B.R. 730 (Bankr. M.D. Pa. 1993); *In re Plabell Rubber Prods., Inc.*, 149 B.R. 475, 479 (Bankr. N.D. Ohio 1992); *In re George Walsh Chevrolet, Inc.*, 118 B.R. 99, 102 (Bankr. E.D. Mo. 1990).

[32] *See, e.g.*, *Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *In re Integrated*

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 7

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{00341541.DOCX;2}
Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 7 of 13

intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and are appropriate in the context of bankruptcy sales.[33]

Here, the Debtor's proposed sale of the Acquired Assets pursuant to the Stalking Horse APA, which represents the highest and best formal offer received by the Debtor since the First Buyer withdrew[34]—in conjunction with the opportunity for interested parties to participate in the Auction and submit competitive bids to purchase the Acquired Assets that are even greater than the offer represented by the Stalking Horse APA—will maximize the value that the Debtor will receive for the Acquired Assets. Specifically, affording other interested purchasers an opportunity to submit competing bids for the Acquired Assets at the Auction will allow the Debtor to quickly and accurately determine the fair market value for the Acquired Assets and maximize the consideration to be paid for the Acquired Assets, which will benefit the estate and its creditors.

Additionally, the Debtor submits that the proposed sale of the Acquired Assets, which the Stalking Horse proposes to purchase as a going concern, will preserve the substantial goodwill of the Debtor's business, maintain valuable relationships with the Debtor's existing customers, preserve jobs, and avoid a piecemeal sale of the Acquired Assets in a severely depressed, "fire-sale" prices.[35] The Debtor therefore believes that sound business reasons support the Debtor's proposed sale of the Acquired Assets.[36]

### 2. The sale of the Acquired Assets has been proposed in good faith.

"The requirement that a Buyer act in good faith … speaks to the integrity of his conduct in the course of the sale proceedings."[37] "Typically, the misconduct that would destroy a

---

*Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the Debtors' duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.").

[33] *See In re Integrated Res., Inc.*, 147 B.R. at 659 (sales procedures should "encourage bidding and maximize the value of the Debtors' assets").

[34] Rosenberger Declaration ¶ 8.

[35] *Id.* ¶ 10.

[36] *Id.*

[37] *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).
[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 8

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

{02341541.DOCX;2}
Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 8 of 13

[Buyer's] good faith status at a judicial sale involves fraud, collusion between the [Buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."[38]

Here, the APA is the result of extensive, arm's length negotiations between the Debtor, the Stalking Horse, and their respective advisors.[39] The Debtor submits the Stalking Horse is a good-faith buyer within the meaning of Section 363(m) of the Bankruptcy Code and is therefore entitled to all of the protections thereof. Additionally, the Debtor's proposed sale of the Acquired Assets under the APA is subject to the possibility of higher or better offers to purchase the Acquired Assets at the Auction, assuring that the ultimate price the Debtor will receive for the Acquired Assets will not be artificially low due to collusion between the Debtor and the Stalking Horse.

Finally, by submitting the Stalking Horse APA to the Court and serving it on parties with an interest in this bankruptcy case, the Debtor has fully disclosed the Stalking Horse APA and subjected it to the scrutiny of the Court and other persons with an interest in ensuring that the sale of the Acquired Assets is proposed in good faith.

**3. The proposed purchase price is fair and reasonable.**

The purchase price reflected in the Stalking Horse APA represents the highest and best formal offer the Debtor has received for the Acquired Assets since the First Buyer withdrew.[40] The Debtor submits that such offer is fair and reasonable, particularly because the Auction presents an opportunity for other interested purchasers to make an offer to purchase the Acquired Assets for a price greater than that set forth in the APA. In other words, the Debtor is proposing to sell the Acquired Assets only after thorough exposure to the market, which will determine a fair price for the Acquired Assets. The Debtor submits that the likely alternative to the proposed sale of the Acquired Assets, either pursuant to the APA or following the Auction, is a forced

---

[38] *Id.*
[39] Rosenberger Declaration ¶ 5.
[40] *Id.* ¶ 8.

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 9

{02341541.DOCX;2}

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 9 of 13

liquidation, with a resultant loss of substantial value to the Debtor's estate.[41]

### 4. Accurate and reasonable notice has been provided of the proposed sale.

As the Court is well aware, the Debtor and its advisors have marketed the Debtor's operations for sale or investment for several months now. Furthermore, the motion requesting entry of the Sale Procedures Order was served on the entire mailing matrix, and the sale itself was advertised by the Sales Agent in both the Wall Street Journal and the Seattle Times.[42] The Debtor submits that under these circumstances, it has provided accurate and reasonable notice of the proposed sale of the Acquired Assets pursuant to the Stalking Horse APA or to an alternate Winning Bidder at the Auction.

## B. The Proposed Sale Satisfies the Requirements of 11 U.S.C. § 363(f).

Section 363(f) of the Bankruptcy Code provides that a debtor in possession may sell property under Section 363(b) of the Bankruptcy Code free and clear of any interest in such property of an entity other than the estate, only if (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.[43]

Here, the Debtor's proposed sale of the Acquired Assets satisfies the requirements of Section 363(f) of the Bankruptcy Code for a sale free and clear of liens. Specifically, this motion will be served on the entire mailing matrix, so that if any entity claims a lien on any of the Acquired Assets, such entity will have an opportunity to object. At this time, the Debtor is not aware of any objections by creditors secured by liens encumbering the Acquired Assets to the Debtor's proposed sale of the Acquired Assets free and clear of liens.[44] If no such creditor

---

[41] *See id.* ¶ 10.
[42] *See* Proof of Service (Dkt. No. 476); Affidavits of Publication (Dkt. No. 526).
[43] 11 U.S.C. § 363(f).
[44] Rosenberger Declaration ¶ 11.

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 10

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{02341544.DOCX;2 }

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 10 of 13

objects, the proposed sale of the Acquired Assets free and clear of liens is permitted under 11 U.S.C. § 363(f)(2).[45] Further, even if secured creditors object to the proposed sale of the Acquired Assets free and clear of liens, a sale free and clear is permissible under 11 U.S.C. § 363(f)(5) because there are legal and equitable proceedings in Washington State in which a lienholder could be compelled to accept a money satisfaction of such lien, such as the disposition of collateral under the default remedies provided in Washington's Uniform Commercial Code (Chapter 62A.9A RCW) or in a receivership pursuant to RCW 7.60.260.[46] Accordingly, the Debtor submits that its proposed sale of the Acquired Assets free and clear of liens is authorized by the Bankruptcy Code.

**C.  The Court Should Approve the Assumption and Assignment of Executory Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365.**

In conjunction with the approval of the proposed sale of the Acquired Assets, the Debtor requests that the Court approve the assumption and assignment of executory contracts and unexpired leases that will be identified in the Auction Report, if applicable. Section 365 of the Bankruptcy Code provides that a debtor in possession may assign an executory contract or unexpired lease only if (a) the debtor in possession assumes the contract or lease in accordance with the Bankruptcy Code and (b) the assignee provides adequate assurance of future performance of such contract or lease.[47] Section 365(b) of the Bankruptcy Code requires a debtor in possession to cure all defaults under an executory contract or unexpired lease before the contract or lease may be assumed.

Here, the Stalking Horse has not yet identified any executory contracts for assumption and assignment, and all of the capitalized leases that the Stalking Horse has identified for assumption and assignment will be fully paid prior to the Sale Hearing.[48] If the Stalking Horse

---

[45] *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent.").
[46] *See In re Jolan, Inc.*, 403 B.R. 866, 869-70 (Bankr. W.D. Wash. 2009).
[47] 11 U.S.C. § 365(f).
[48] Rosenberger Declaration ¶ 9.

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 11

{02341544.DOCX;2 }

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 11 of 13

(or the Winning Bidder) identifies any executory contracts or unexpired leases for assumption and assignment, the Debtor will disclose them in the Auction Report, and will also make best efforts to notify the counterparties of such contracts and leases of the proposed assumption/assignment, the asserted cure costs, and the timing of the Sale Hearing, in a form substantially similar to the form of notice previously approved by this Court in connection with the proposed sale to the First Buyer.[49]

The Sales Agent believes that the Debtor is willing to cure all defaults under any executory contracts and unexpired leases it proposes to assume and assign to the Stalking Horse or the Winning Bidder as part of the sale of the Acquired Assets, with any cure amounts to be paid at the closing of the sale of the Acquired Assets.[50] In addition, if requested by any counterparty to a contract or lease the Debtor proposes to assume and assign to the Purchaser, the Debtor believes that the Stalking Horse and each of the other Qualified Bidders who have submitted bids could provide adequate assurance of future performance under such contract or lease.[51] Accordingly, the Debtor requests that the Court approve the proposed assumption and assignment of any executory contracts and unexpired leases that the Debtor identifies for assumption and assignment in the Auction Report.

## VI. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an order in the form proposed by the Debtor authorizing the proposed sale of the Acquired Assets to the Purchaser free and clear of liens, and approving the assumption and assignment of executory contracts and unexpired leases that will be identified in the Auction Report.

///

///

---

[49] *Id.*; *see also* Order Approving (A) the Stalking Horse Sale Agreement Term Sheet, (B) the Bid Procedures, (C) the Auction Notice, and (D) the Assumption Procedures and Assumption Notice (Dkt. No. 206).
[50] *See* Rosenberger Declaration ¶ 9.
[51] *Id.*

[AMENDED] MOTION FOR APPROVAL OF SALE OF SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES - 12

{02341541.DOCX;2 }

CAIRNCROSS & HEMPELMANN, ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700  fax 206 587 2308

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 12 of 13

1   DATED this 22nd day of July, 2013.

                                    CAIRNCROSS & HEMPELMANN, P.S.

                                    /s/   *John R. Rizzardi*
                                    John R. Rizzardi, WSBA No. 9388
                                    Jessica C. Tsao, WSBA No. 44382
                                    Attorneys for the Debtor

[AMENDED] MOTION FOR APPROVAL OF SALE OF
SUBSTANTIALLY ALL ASSETS FREE AND CLEAR OF LIENS AND
ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES - 13

CAIRNCROSS & HEMPELMANN,
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

{02341544.DOCX;2 }

Case 12-18366-KAO    Doc 536    Filed 07/22/13    Ent. 07/22/13 14:54:55    Pg. 13 of 13