HON. KAREN A. OVERSTREET
CHAPTER: 11
LOCATION: SEATTLE
HEARING DATE: AUGUST 20, 2013
HEARING TIME: 9:30 AM
RESPONSE DATE: AUGUST 6, 2013

UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| In re:<br><br>CASCADE AG SERVICES, INC.,<br><br>Debtor. | NO. 12-18366-KAO<br><br>DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION |

# I. INTRODUCTION AND RELIEF REQUESTED

Only four parties have responded to the Debtor's motion (the "**Sale Motion**," Dkt. No. 536) requesting an order approving the sale of substantially all estate assets to Pleasant Valley Farms, LLC (the "**Stalking Horse**").[1] Of these four parties, three—One PacificCoast Bank ("**OPB**"); Columbia State Bank ("**Columbia**"); and Washington Federal ("**WA Fed**," and together with OPB and Columbia, the "**Banks**")—support the proposed sale. *See* Dkt. Nos. 561, 562, and 560, respectively. The remaining party—EDCO Food Products, Inc. ("**EDCO Foods**"), an unsecured creditor owed approximately $9,200—argues that it should be paid in full. *See* Dkt. No. 559.

Significantly, and although the Banks take issue with the Sales Agent's designation of two potential Alternative Bidders, no party has objected to the fairness of the auction or any

---

[1] The Stalking Horse was formerly known as Triak Holdings, LLC.

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 1

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

terms of the proposed sale to the Stalking Horse.  Furthermore, EDCO Foods' objection, filed by a corporation that may not appear *pro se*, should be stricken.  Accordingly, the Debtor respectfully requests that the Court enter an order approving the sale and authorizing the Debtor to close.

## II.  BACKGROUND

### A. The Sale Procedures Order and Bidder Identification

On June 28, 2013, the Court entered an order (the "**Sale Procedures Order**" Dkt. No. 512) approving procedures for the sale of the Debtor's assets.[2]  Among other things, the Sale Procedures Order designated the Stalking Horse as the "stalking horse" bidder, scheduled an auction (the "**Auction**") for the Debtor's assets, and established bidding procedures to govern the Auction.

Pursuant to the Sale Procedures Order, Red to Black Advisors, LLC (the "**Sales Agent**"), the Debtor's court-appointed sales agent, evaluated bids received by the deadline for submission, and based on its review, identified six "Qualified Bids" in addition to the Stalking Horse's bid. Auction Report (Dkt. No. 554) ¶ 4.  Three of the Qualified Bids were credit bids by the Banks. The remaining Qualified Bids were received from Kruger Foods, Inc. ("**Kruger**"); OND Farms, LLC ("**OND**," whose bid was qualified subject to certain conditions that were satisfied before the Auction commenced); and Mark Calvert (whose bid was qualified subject to certain conditions that were not satisfied before the Auction commenced).  *See id*. ¶ 4; *see also* Declaration of Leo Rosenberger ("**Rosenberger Declaration**") ¶ 3.

### B. The Auction

On July 30, 2013, and pursuant to the Sale Procedures Order, the Sales Agent conducted the Auction, which commenced at approximately 9:00 a.m. at the offices of Schwabe, Williamson & Wyatt, in Seattle, Washington.[3]  Rosenberger Declaration ¶ 4.  The Auction took

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Sale Procedures Order.
[3] The Auction was originally scheduled to take place at the offices of Cairncross & Hempelmann, P.S.  The location was changed in order to accommodate the number of participants.

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 2

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA  98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3 }
Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 2 of 8

place in seven total rounds, over approximately nine hours. *Id*. Throughout the Auction, the Sales Agent accepted both "all-asset" and component bids. Auction Report ¶ 6. The Auction concluded in the seventh round, after each of the bidders present stated that it was no longer interested in bidding. *Id*. At that time, the highest bid was the Stalking Horse's all-assets, all-cash bid of $4,135,000. *Id*.

At the conclusion of the Auction, the Sales Agent preliminarily deemed the Stalking Horse's bid the Winning Bid. Rosenberger Declaration ¶ 5. The Sales Agent also preliminarily designated, as the Alternative Bid, a combination of component bids (the "**Combination Bid**") submitted by Kruger, OPB, WA Fed, and Columbia. *Id*. Finally, the Sales Agent confirmed with OND, the then-third-highest bidder (in terms of face dollar amount), that its offer (the "**OND Bid**") would continue to stand in the event that the transaction with the Stalking Horse failed to close. *Id*. The Sales Agent recalls making a statement at the end of the Auction that the Winning and Alternative Bidder designations were based only on a preliminary review, and that it might be necessary to designate more than one Alternative Bid due to issues that would arise in comparing a combination bid with a going-concern, all-assets bid. *Id*. ¶ 6.

**C. Designation of Two Alternative Bids.**

Following the Auction, the Sales Agent continued to evaluate the three highest bids placed at the Auction. *Id*. ¶ 7. Upon further consideration of the OND Bid and the Combination Bid, the Sales Agent concluded that additional analysis would be required to deem either bid higher—and better for the estate—than the other. *Id*. Specifically, although the Combination Bid's total, face dollar amount is higher than the OND Bid—and also leaves the Debtor's real property with the estate—the non-going-concern nature of the Combination Bid gives rise to several uncertainties and undesirable outcomes, including, but not limited to the following:

- Uncertainty as to whether certain administration costs of the estate, specifically certain post-petition liabilities and post-petition unpaid payroll and related taxes, are entitled to priority over secured creditors, whereas the OND Bid contemplates assumption of a portion of these liabilities.

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 3

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3.}

Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 3 of 8

- Additional costs associated with wrapping up the estate following a component sale.

- Uncertainty regarding the status of a state tax deferral certificate. Specifically, the Debtor received a tax deferral under the Department of Revenue's Rural County Sales and Use Tax Deferral Program for taxes that otherwise would be owing with respect to the construction of a building completed in 2011. According to the Department of Revenue, the total amount due and owing at this time, if not for the deferral, would be $213,960. This amount will decrease each year beginning in 2014, until the entire amount is extinguished in 2018, so long as the building continues to be used for manufacturing or research and development. If the Debtor's assets are sold to a purchaser that does not continue such use within 60 days, the entire tax balance will become due. Both the Stalking Horse and OND agreed to assume this contingent liability, whereas the balance could become payable by the estate if the Combination Bid prevails.

- Uncertainty regarding claims of tank yard lessor. The Debtor leases approximately half of the property on which its tank farm sits from Emerald Partners, et al., commonly known as "Haller Farms." Haller Farms has asserted that if the Debtor's operations cease, the agreement between Haller Farms and the Debtor requires that the Debtor return the leased property to its original condition—the condition it was in before the tank yard infrastructure was built. It is not clear at this time whether this assertion is valid or what type of claim (pre- or post-petition) such an obligation would constitute, but at the very least, the non-going-concern nature of the Combination Bid raises questions about the estate's obligations with respect to the Haller Farms lease. In contrast, it is the Sales Agent's belief, based on representations made at the Auction, that both OND and the Stalking Horse have an understanding with Haller Farms and would continue to lease the tank yard property.

- Time and cost associated with inventory transfer. Kruger, who bid on the Debtor's tanked (and other) inventory as part of the Combination Bid, has indicated that it would require 180 days—or approximately six months—to remove the tanked inventory from the Debtor's facility. Furthermore, Kruger's bid is subject to reasonable access to the real property in order to remove inventory. The Sales Agent can attempt to facilitate, but cannot guarantee, "reasonable access" to the Haller Farms property. Moreover, the six-month removal of inventory will require oversight, at additional cost to the estate.

- Uncertainty regarding real property disposition. The Banks correctly observe that the Combination Bid leaves the Debtor's real property to be sold. To that end, Don Gustafson's April 2013 appraisal valued the land at $300,000. However, the net recovery of a sale of the real property is highly uncertain. The building itself was built for a special purpose, and may need to be razed in order to realize the highest price for the land. Furthermore, Mr. Gustafson's analysis indicated a market exposure period of 10-12 months to achieve a sale of the property at the appraised value. During this time, the costs of marketing the property would continue to accrue.

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 4

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3 }
Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 4 of 8

- Possible environmental remediation issues. The Debtor's real property has been used as a food processing site, and although no environmental issues of significance have been raised to date, it is possible that some level of remediation would be necessary to sell the land.
- Loss of employment in the Skagit Valley community following the closing of the Debtor's operations.

*Id.* ¶ 7. In short, in the event that the Stalking Horse transaction does not close, determining the next highest, *and best*, transaction for the estate will require more than just comparing the face dollar amounts of the OND Bid and the Combination Bid. *Id.* ¶ 8. For this reason, the Sales Agent designated two Alternative Bids, *see id.*, and the Debtor reserves the right to submit additional briefing on the issue of which of these bids should be deemed the Alternative Bid, if that issue becomes ripe.

**D. Activities Since the Auction.**

In the meantime, the Debtor asks the Court to approve the Stalking Horse's winning bid, pursuant to the terms of the asset purchase agreement (the "**Updated APA**") that was annexed to the Auction Report. The Updated APA left certain schedules to be finalized through additional pre-closing diligence, but did designate two unexpired field leases for assumption by the Debtor and assignment to the Stalking Horse. *See* Updated APA Schedule 2.2(b). To that end, on Friday, August 2, 2013, as soon as the Updated APA was executed, the Debtor began efforts to contact the counterparties to these leases: Arlene Mesman and Doreen Nystrom. *See* Declaration of John Rizzardi ¶ 3. Debtor's counsel emailed the Updated APA to Ms. Mesman on August 2, and Fed Ex'ed the Updated APA to Ms. Nystrom on Saturday, August 3, after efforts to contact her by phone were unsuccessful. *See id.* ¶ 4, *see also* Declaration of Jessica Tsao ¶ 3. Furthermore, on Wednesday, August 7, the Debtor mailed to both Ms. Mesman and Ms. Nystrom a "Notice of Proposed Assumption and Assignment" with a stated objection date of August 16, 2013, to allow additional time for Ms. Mesman and Ms. Nystrom to object to the assignment and assumption of their leases. *See* Letter from Attorney to Judge re Proposed Extension of Objection Deadline for Landlords (Dkt. No. 557); *see also* Proof of Service (Dkt.

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 5

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3 }

Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 5 of 8

1 No. 564). If either Ms. Mesman or Ms. Nystrom objects to assumption and assignment, the
2 Debtor reserves the right to file a supplemental reply.
3       Meanwhile, the Stalking Horse and the Debtor continue to engage in pre-closing
4 activities to prepare for an anticipated closing on or before August 30, 2013. Rosenberger
5 Declaration ¶ 9. The Sales Agent is hopeful that pre-closing coordination will go smoothly, but
6 will seek additional relief from this Court to the extent necessary to continue moving the
7 transaction toward a successful closing. *Id*.

## III. ISSUE PRESENTED

9       The sole issue addressed in this reply is whether the Court should approve the sale of
10 substantially all of the Debtor's assets to the Stalking Horse, as contemplated in the Updated
11 APA, free and clear of liens and encumbrances. The Debtor submits that it should.

## IV. EVIDENCE RELIED UPON

13       This reply relies upon all of the files and records herein, including the Declarations of
14 Leo Rosenberger, John Rizzardi, and Jessica Tsao, which are filed concurrently herewith.

## V. ARGUMENT AND AUTHORITY

16 **A. The EDCO Foods objection should be stricken and overruled.**

17       As an initial matter, the Court should strike the objection of EDCO Foods, which is a
18 corporation and may not appear *pro se* in these proceedings. *See Simon v. Hartford Life, Inc.*,
19 546 F.3d 661, 664 (9th Cir. 2008) (collecting the cases and observing that "courts have routinely
20 adhered to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others
21 in a representative capacity."). Even if the Court is inclined to consider EDCO Foods' objection,
22 the objection should be overruled: Although it is unfortunate that general unsecured creditors
23 will not receive a distribution from the estate, a resolution of this case that results in a
24 distribution to general unsecured creditors is highly improbable. The Sales Agent diligently
25 marketed the Debtor's assets, and obtained what it believes to be the highest and best offer
26 available under the circumstances. *See* Declaration of Leo Rosenberger (Dkt. No. 537) ¶¶ 3-4;

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 6

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3 }

Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 6 of 8

Rosenberger Declaration ¶ 10. The Court should approve that offer over EDCO Foods' objection. Furthermore, EDCO Foods may receive something if the sale to the Stalking Horse is approved, because the Stalking Horse will, under the Updated APA, transfer 10 percent of its membership units to a trust or other entity established for the benefit of unsecured creditors. *See* Updated APA § 2.4(a).

**B. The Court should approve the proposed sale to the Stalking Horse, free and clear of liens and encumbrances.**

The Debtor has previously set forth the reasons that the original Stalking Horse APA—with a total purchase price of $3,000,000—satisfies the elements of Section 363(b) and is in the best interests of the estate. *See* Sale Motion at 7-10. The Updated APA is even better: The total purchase price is more than $1,100,000 higher, there is no break-up fee to pay, the Stalking Horse agreed to assume the Debtor's tax deferral certificate, and the unsecured creditors will receive a gift of 10 percent of the Stalking Horse's equity.

Furthermore, a sale "free and clear" is appropriate because the requirements of 11 U.S.C. § 363(f) have been met. Specifically, the Banks support the sale to the Stalking Horse, and other lienholders are deemed to have consented because they received notice of the Sale Motion and have not timely objected. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) ("[L]ack of objection (provided of course there is notice) counts as consent.").

Finally, and as the Court is well aware, the Banks all have relief from the stay, and could have, if they elected to do so, exercised their state law foreclosure remedies. However, all parties involved agreed that the a competitive auction process would maximize the proceeds of sale, consistent with the paramount goal of any proposed sale of estate property. *See e.g., Four B. Corp. v. Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (stating that, in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the objective of bankruptcy rules and the Debtor's duty with

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 7

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3 }
Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 7 of 8

respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."). The support of the Banks—who would have the most to gain or lose based on the outcome of the auction—is evidence that the auction process did indeed result in the best possible outcome for the estate. Accordingly, that outcome should be approved.

### VI. CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court approve the proposed sale of substantially all of the Debtor's assets to the Stalking Horse, free and clear of liens and encumbrances.

DATED this 8th day of August, 2013.

CAIRNCROSS & HEMPELMANN, P.S.

/s/ *John R. Rizzardi*
John R. Rizzardi, WSBA No. 9388
Jessica Tsao, WSBA No. 44382
Attorneys for Debtor

DEBTOR'S OMNIBUS REPLY TO RESPONSES TO SALE MOTION - 8

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 2nd Ave, Suite 500
Seattle, WA 98104
office 206 587 0700 fax: 206 587 2308

{02356151.DOCX;3 }
Case 12-18366-KAO    Doc 566    Filed 08/08/13    Ent. 08/08/13 16:52:22    Pg. 8 of 8